UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZEV YOURMAN,<br><br>                              Plaintiff,<br><br>              -against-<br><br>COLUMBIA NY PRESBYTERIAN HOSPITAL, et al.,<br><br>                              Defendants. | **REPORT & RECOMMENDATION<br>ON MOTIONS TO DISMISS**<br><br>**24-CV-6286 (JPC) (KHP)** |

**TO:     HON. JOHN P. CRONAN, United States District Judge**
**FROM: KATHARINE H. PARKER, United States Magistrate Judge**

Pro se plaintiff Zev Yourman brings this action against New York Presbyterian Hospital ("NYPH"), Columbia University ("Columbia"), Julio Pujolis, and Paul Freeman,[1] alleging he was discriminated against because he was Jewish and practicing his religion, in violation of Title VI, 42 U.S.C. § 2000d, and the First and Fourteenth Amendments as enforced under 42 U.S.C. § 1983, in connection with his visit to NYPH's Allen Hospital on or around December 8, 2023. NYPH, with Pujolis and Freeman (together, the "Hospital Defendants"), move to dismiss the Second Amended Complaint ("SAC") in full. Columbia separately moves for the same relief. For the reasons that follow, I respectfully recommend the motion be **granted**, and the SAC dismissed in full with prejudice as to the Section 1983 claims against all Defendants and as to the Title VI claims against Pujolis and Freeman. I recommend that the SAC be dismissed without prejudice as to the Title VI claims against Columbia and NYPH.

---

[1] Plaintiff also names "Columbia NY Presbyterian Hospital," with the same address listed in the Second Amended Complaint as NYPH, Pujolis, and Freeman. (ECF No. 11 ¶ 5.) However, no such entity is known to exist. The Court construes "Columbia New York Presbyterian Hospital" solely to refer to NYPH.

**BACKGROUND**

The essential facts are derived from the face of the SAC and assumed to be true for the purposes of this motion. Plaintiff alleges he "was invited to" Allen Hospital, located at 5141 Broadway, New York, N.Y., for a medical appointment. (ECF No. 11, SAC ¶ 8.) After completing his appointment, Plaintiff, who is Jewish and observant, "was peacefully and quietly engaged in Jewish religious observance in a room designated by the hospital for Jewish religious accommodation." (*Id.*) Plaintiff alleges the room for Jewish religious observance at Allen Hospital "was established by an agreement between the Jewish Community and the Hospital." (*Id.* ¶ 9.) He says it "is maintained by volunteers from the Square Hasidic organization." (*Id.*) He did not need permission to be in the room. (*Id.*)

As Plaintiff engaged in religious observance, he was "interrupted and harassed by loud and frantic banging on the door." (*Id.* ¶ 8) When Plaintiff opened the door, two security guards—Defendants Pujolis and Freeman—entered the room and told him to "put away [his] prayer book," and to leave campus immediately. (*Id.*) Pujolis and Freeman are employed by NYPH. (*Id.* ¶ 15.) Freeman allegedly told Plaintiff to "take [his] Jewish stuff off campus" and escorted Plaintiff to "the main road." (*Id.* ¶ 8) Plaintiff said they gave no reasons for these actions. (*Id.*)

Plaintiff also notes that he "observed anti-semitic handbills at Allen Hospital, and the previous day at the main hospital campus on 168[th ]street." (*Id.*) His complaint cites as background "the ongoing anti-Jewish activity on the part of Columbia University and related institutions, which is well publicized[.]" (*Id.*)

Plaintiff alleges Columbia and NYPH "are affiliated with each other and intertwined due to agreements, contracts, and permissions." (*Id.* ¶ 11.)  He asserts each institution "receive[s] federal funding through contracts" and "grants" for public benefits. (*Id.* ¶¶ 12, 13.)  Plaintiff notes that "Allen Hospital has a large sign on the building [which says] 'New York Presbyterian', and [his] medical bills state Columbia University." (*Id.* ¶ 17.)  Plaintiff cites news reports that "the federal government is considering withholding tens of millions of dollars in federal grants to Columbia University and its affiliates due to the epidemic of anti-semitism on its campuses." (*Id.* ¶ 21.)

Plaintiff alleges injuries including emotional distress, high blood pressure, and violation of his civil rights. (*Id.* ¶ 23.)  He requests compensatory and punitive damages of at least $20 million. (*Id.* ¶ 24.)

Plaintiff filed this action on April 22, 2024, in the Eastern District of New York. (ECF No. 1.)  The Complaint was subsequently transferred to this District on April 30, 2024. (ECF No. 4.)  Plaintiff filed a First Amended Complaint ("FAC") on January 7, 2025, and Judge Swain ordered him to further amend the complaint within 60 days. (ECF No. 10.)  Assuming that "Allen Hospital [wa]s operated by Columbia University" and "Columbia University receives federal funding," Judge Swain *sua sponte* dismissed the FAC and granted leave to file an amended complaint. (*Id.* at 3.)  In particular, Judge Swain noted that Plaintiff's relationship with Allen Hospital was unclear from the face of the FAC, and that "Title VI applies only to entities that receive federal funding," and not to individuals. (*Id.* at 3-4 (citing *Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007)).  Thereafter, Plaintiff filed the SAC on March 12, 2025. (ECF No. 11.)

3

**LEGAL STANDARDS**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim achieves "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When considering a motion to dismiss under Rule 12(b)(6), "a court must accept as true all of the [factual] allegations contained in [the] complaint." *Id*.  However, the court should not accept legal conclusions as true: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

The Court affords special solicitude to Plaintiff, as a pro se litigant, and construes his pleadings and opposition to the instant motion liberally to present the best arguments possible in opposition to the motion.  *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

**DISCUSSION**

Plaintiff raises claims under Section 1983 and Title VI.  The Court addresses each in turn.

I.      Section 1983

Plaintiff's claim under Section 1983 is based on his belief that Defendants interfered with his First Amendment right to freely exercise his religion and discriminated against him for being Jewish.  To state a claim under Section 1983, "[t]he conduct at issue 'must have been committed by a person acting under color of state law' and 'must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  "The traditional definition of acting under

4

color of state law requires that the defendant in a § 1983 action ha[s] exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Carlose v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997) (cleaned up). Private entities sometimes qualify as state actors when they "exercise[] 'powers traditionally reserved to the State.'" *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). However, "it is not enough that the function serves the public good or the public interest in some way." *Id.* "Rather, to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function." *Id.* "'[V]ery few' functions fall into that category." *Id.* Private entities do not become state actors merely because they (1) "perform under a state contract," (2) "accept[] state or federal funds," or (3) are "subject to state regulation." *Roberts v. N.Y. Presbyterian Hosp.*, No. 24-cv-1352 (HG) (PK), 2024 WL 1413030, at *2 (E.D.N.Y. April 2, 2024) (collecting cases).

"Defendant New York Presbyterian Hospital is a not-for-profit, private hospital." *Roberts*, 2024 WL 1413030, at *2 (citing *Gomez Nacer v. Div. of Gen. Med., NYPH*, No. 20-cv-5197 (LLS), 2020 WL 4605243, at *3 (S.D.N.Y. Aug. 7, 2020)). "New York Presbyterian Hospital is not considered a state actor, even if it is licensed and regulated by the state." *Id.* (collecting cases where hospitals are found not to be state actors).

Likewise, courts in a wide array of cases have concluded that Columbia University and its employees are not state actors but rather are private entities. *Milton v. Alvarez*, No. 04-cv-8265 (SAS), 2005 WL 1705523, at *3 (S.D.N.Y. July 19, 2005); *accord Seale v. Trs. of Columbia Univ.*, No. 22-cv-9717 (JPO), 2023 WL 6276687, at *3 (S.D.N.Y. Sept. 26, 2023); *Roemer v. Booth*, 710

F. App'x 36, 38 (2d Cir. 2018); *Chen v. City of New York*, 622 F. App'x 66, 67 (2d Cir. 2015); *Raghavendra v. Trs. of Columbia Univ.*, No. 06-cv-6841 (PAC) (HBP), 2008 WL 2696226, at *5 (S.D.N.Y. July 7, 2008); *Sirohi v. Trs. of Columbia Univ.*, 162 F.3d 1148, 1148 (2d Cir. 1998) (table decision); *Biswas v. Rouen*, 808 F. App'x 53, 54 (2d Cir. 2020) (summary order).

Under the above case law, the Section 1983 claims must be dismissed against all of the Defendants because Plaintiff has not plausibly alleged that Columbia, NYPH, or their employees are state actors.  To start, there are no factual allegations that would support a finding that the two entities are state actors.  As to the individual defendants, Plaintiff affirmatively pleads that they were employees of NYPH (and not of Columbia) and thus concedes they are not state actors.  The only theory Plaintiff advances for finding Defendants are state actors is that Defendants "were contracted to provide services to the public through New York City, New York State, and the Federal government through such sources as [M]edicaid, [M]edicare, and other government financing . . . ." (ECF No. 66 ¶ 44.)  But the case law makes clear that these facts are insufficient to deem Defendants "state actors" for purposes of a Section 1983 claim. *See Manhattan Cmty. Access Corp.*, 587 U.S. at 814.  Nor is the Court aware of any other reason, from the pleadings or Plaintiff's papers on this motion, why Columbia, NYPH, or NYPH employees should be considered state actors. *Cf. Johns v. County of Suffolk*, 164 F. Supp. 3d 388, 395-97 (E.D.N.Y. 2016) (concluding that, where a police department retained significant management authority over a sex offender registry program, a contract between a private organization and the police department converted the private organization into a state actor). It is not sufficient that Plaintiff (correctly) asserts he has a First Amendment right to practice his

religion.  He does have that right, but he cannot sue private entities or individuals for violating

that right absent facts that would transform them into state actors.

Plaintiff cites *West v. Atkins*, 487 U.S. 42 (1988), for the proposition that a doctor under

contract to provide medical services to prison inmates constituted a state actor.  This case does

not assist him, however, because the doctor at issue in *West* was deemed to be performing a

traditional and exclusive function of the state—namely, medical care for inmates. *Id.* at 54-55.

Here, Plaintiff alleges no facts to state a plausible claim that Pujolis or Freeman performed any

function of the state, much less a traditional and exclusive one.  Thus, this argument is not

persuasive.

Accordingly, Plaintiff has failed to plead colorable Section 1983 claims against the

Defendants in this case, and those claims should be dismissed.

II.     Title VI

"Title VI prohibits intentional discrimination based on race in any program that receives

federal funding." *DT v. Somers Cent. Sch. Dist.*, 348 F. App'x 697 699 (2d Cir. 2009); *see also*

*Alexander v. Sandoval*, 532 U.S. 275, 282-83 (2001); 42 U.S.C. § 2000d, *et seq.*  To state a Title VI

claim for discrimination, a Plaintiff must allege "'(1) that the entity involved engaged in racial or

national origin discrimination; (2) the entity involved is receiving federal financial aid; and (3)

plaintiff was an entitled beneficiary of the program or activity receiving the aid.'" *Freckleton v.*

*Mercy College NY*, No. 22-cv-1985 (KMK), 2023 WL 2648827, at *4 (S.D.N.Y. March 27, 2023)

(citing *Babiker v. Ross Univ. Sch. Of Med.*, No. 98-cv-1429, 2000 WL 666342, at *4 (S.D.N.Y. May

19, 2000), *aff'd*, 86 F. App'x 457 (2d Cir. 2004)).  Title VI prohibits only "intentional

discrimination" via Section 601. *Alexander*, 532 U.S. at 280.  Thus, to establish the

discrimination prong, a plaintiff must allege a plausible claim "that the defendant discriminated against plaintiff on the basis of race, that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." *Freckleton*, 2023 WL 2648827, at *4 (cleaned up) (citing *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 556 (E.D.N.Y. 2012)); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).

As an initial point, "Title VI does not provide for individual liability." *See Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018); *see also Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007) (citing *Folkes v. N.Y. Coll. of Osteopathic Med.*, 214 F. Supp. 2d 273, 292 (E.D.N.Y. 2002)).  Vicarious liability is unavailable for Title VI claims; the allegations must relate to institutional conduct. *See Goonewardena*, 475 F. Supp. 2d at 328.  Further, Title VI claims can be alleged only against an institution which has engaged either in intentional discriminatory conduct or been deliberately indifferent to "severe, pervasive, and objectively offensive" conduct. *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 347-48 (S.D.N.Y. 2014) (cleaned up) (citing *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012)).  In the Second Circuit, courts deciding Title VI cases involving claims of deliberate indifference to "severe, pervasive, and objectively offensive" conduct often rely on Title IX discrimination case law regarding that statute's similar standard. *See, e.g.*, *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140-41 & n.5 (2d Cir. 1999) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 643-44 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)).

"The deliberate indifference standard . . . is a narrow one." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012). "Liability only arises if a plaintiff establishes: (1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference." *Id.* "Even assuming the requisite level of control, not all harassment is actionable." *Id.* To be actionable, "harassment must be 'severe, pervasive, and objectively offensive' and discriminatory in effect." *Id.* Constructive knowledge will not be sufficient; a plaintiff must plead actual knowledge. *Id.* at 666. Courts in this circuit have held that in the absence of an alleged discriminatory policy, "a damages remedy will not lie . . . unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond." *See Aoutif v. City Univ. of N.Y.*, No. 05-cv-496, 2005 WL 3334277, at *4 (E.D.N.Y. Dec. 8, 2005) (internal quotation marks omitted) (quoting *Gebser*, 524 U.S. at 290 (1998)). Finally, as to deliberate indifference, the defendant's action or lack thereof "must, 'at a minimum, cause students to undergo harassment or make them liable to or vulnerable to it.'" *Zeno*, 702 F.3d at 666 (quoting *Davis*, 526 U.S. at 643-44). "A finding of deliberate indifference depends on the adequacy of a [defendant's] response to the harassment." *Id.* (citing *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003)).

Here, Plaintiff cannot maintain Title VI claims against the individual defendants, Pujolis and Freeman, because there is no individual liability for Title VI claims. Thus, the Title VI claims asserted against Pujolis and Freeman should be dismissed.[2]

---

[2] While the Court raised the possibility of construing Plaintiff's claims against Pujolis and Freeman as 42 U.S.C. § 1981 racial discrimination claims, Plaintiff has not responded to Defendants' arguments regarding Section 1981, which explain why any such claim would be without merit based on the allegations in the FAC. Accordingly, the Court declines to construe his claims against Pujolis and Freeman as Section 1981 claims.

Likewise, Plaintiff can only hold Columbia and/or NYPH liable if he alleges a policy which enabled the harassment or alleges deliberate indifference to severe, pervasive, and objectively offensive conduct.  He does not do so.  He cites no policy of NYPH or Columbia University which he says led to his harassment.  Importantly, he must allege in non-conclusory fashion the existence of a discriminatory policy to survive a motion to dismiss. *See Ctr. for Transitional Living, LLC v. Advanced Behav. Health Inc.*, No. 20-cv-1362 (KAD), 2021 WL 930082, at *4 (D. Conn. March 11, 2021); *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1077 (2d Cir. 2021). Yet nothing in the SAC or his opposition papers point to any actual policy of either institution which he alleges to be discriminatory and a cause of the harassment he alleges he experienced.

Nor has Plaintiff plausibly alleged deliberate indifference to severe and pervasive discriminatory conduct.  On the contrary, Plaintiff alleges specifically that the antisemitic harassment took place on exactly one occasion in his memory, which he confirmed in representations to the Court during a conference. (ECF No. 51-2, at 11:3-13:1.)  Apart from the single instance of harassment, his theory for severe, pervasive, and objectively offensive conduct is predicated upon his allegations of antisemitic handbills at Allen Hospital—where he alleges he experienced discriminatory treatment—and Irving Hospital, which is on West 168th Street in Manhattan and is a separate facility from Allen Hospital.  But these allegations are insufficient to state a claim insofar as they fail to identify who posted the alleged handbills, why they were posted, and what NYPH's responses to the handbills were once they learned of them. The SAC includes no allegation that he put NYPH or Columbia on actual notice of any of the alleged harassment—whether the handbills or the incident involving Pujolis and Freeman—and even accepting his assertion, raised for the first time in his opposition papers, that he told an

10

NYPH-employed rabbi about the harassment, he fails to allege that he informed an individual with the power to respond to the harassment on behalf of NYPH (or that the NYPH-employed rabbi was such a person).  Nor does Plaintiff detail anything about the response—or any alleged lack of response—of either NYPH or Columbia to any complaint he may have raised to the NYPH rabbi; but, notably, informed the court at a conference that he did not experience any similar conduct on any subsequent visit to NYPH.  He also does not allege he told anyone with authority to remedy the harassment on behalf of Columbia (which likely also does not have control over what happens with private security at Allen Hospital).[3]

Plaintiff's citation to *Cadet v. All Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 229 (S.D.N.Y. 2022), for the proposition that "a single instance of conduct" can be considered severe or pervasive, does not assist him.  Case law makes clear that a single instance of conduct is actionable only for "harassment that is extraordinarily severe," such as "lengthy" and "abusive" tirades about sexual acts and an employee forcibly trying to kiss recent domestic violence victims. *Id.* (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000); *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 255, 259 (S.D.N.Y. 2014).  Indeed, *Cadet* involved an alleged assault. *Id.* at 213, 217, 232.  Here, Plaintiff is clear he was a patient—not an employee—and he asserts that he was "interrupted" in his prayers and "escorted" off the premises.  He was not physically assaulted.  He added on the record that, as he was being escorted off the premises, there was no conversation and he asked the individual defendants, "Can I say a prayer for

---

[3] Because the Title VI claims should be dismissed regardless of whether Columbia and NYPH are "one and the same," as Plaintiff argues, the Court need not address this argument.  However, for the avoidance of doubt, the corporate formation documents of NYPH attached by Plaintiff (ECF No. 66-1, at 27-30), and the Columbia formation documents filed to the docket (ECF Nos. 55-1 to 55-7), make clear that these institutions are not the same entity.  The mere fact that some Columbia medical faculty may have held privileges at or been employed by NYPH does not blur the clear distinction between Columbia and NYPH.

11

you?" (ECF No. 51-2, at 14:15-20.)  The incident, even considering the offensive comments attributed to the individual defendants, does not come close to level of severity necessary to render the incident one that satisfies the severe and pervasive standard. (ECF No. 11 ¶ 8.) *See also Folkes*, 214 F. Supp. 2d at 292 (noting that three separate instances of sexually suggestive and racially inflected questions and comments, "while inappropriate and offensive, d[id] not rise to the level of severity or pervasiveness necessary to make out a claim" under Title VI). While the Court may view the alleged conduct to be troubling, Plaintiff's pleading falls far short of the level of degree of severity examined in *Cadet*.

Accordingly, the Title VI claims should be dismissed.

### III.    Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave [to amend a complaint] when justice so requires."  Dismissal with prejudice is proper only where the deficiencies with the complaint are incurable.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming dismissal of complaint because "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it.")  Where the Plaintiff is proceeding pro se, '[d]istrict courts should generally not dismiss a pro se complaint without granting the plaintiff leave to amend" unless amendment "would be futile." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013).  It is "within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).

Here, an opportunity for Plaintiff to amend his Section 1983 claims would be futile where it is indisputable that Columbia, NYPH, Pujolis, and Freeman are not state actors.  As to Pujolis and Freeman, Plaintiff affirmatively pleads that they were employed by NYPH and acting

12

in that capacity on the date in question.  Thus, a Section 1983 claim cannot be maintained against any of the Defendants.  The Section 1983 claims should therefore be dismissed with prejudice.

As to the Title VI claims, it would be futile to permit Plaintiff to replead his claims against Pujolis and Freeman, as the law is clear that individuals cannot be held liable under Title VI.  On the other hand, it would not be futile to allow Plaintiff to replead his Title VI claims against Columbia and NYPH, provided he can cure the deficiencies noted above.  Thus, the Title VI claims should be dismissed with prejudice as to Pujolis and Freeman and otherwise dismissed without prejudice.

### IV.    Other Arguments Raised by Plaintiff

Plaintiff devotes a sizable portion of his brief to three other arguments:  (1) that the Defendants failed to comply with this Court's July 29, 2025 order requiring production of documentation evincing NYPH's and Columbia's corporate formation and/or ownership; (2) that Allen Hospital failed to give him MetroCards when he visited; and (3) that attorney Shira Blank for the Hospital Defendants should be sanctioned.  The Court notes, first, that these three issues are well outside the relevant subject matter for consideration on the motion to dismiss. Second, there has been no briefing or pre-motion letters regarding sanctions for failure to comply with court orders or attorney misconduct, which is required by the undersigned's Individual Practices and Rules.  Third, the substance of the MetroCard issue is irrelevant to this case in all ways except one: it is only relevant insofar as NYPH cites it as the only complaint it received from Plaintiff prior to his lawsuit, and the letter Plaintiff sent regarding MetroCards—

13

signed after the date he allegedly suffered antisemitic harassment at Allen Hospital (ECF No. 66-1, at 6)—contains no allegations of the antisemitic harassment claimed in this lawsuit.

Finally, Plaintiff filed a document with this court purporting to respond to the "November 7, 2025 due date replies." (ECF No. 76.)  Plaintiff subsequently filed a letter with the court explaining that his submission at ECF No. 76 was not intended to be a sur-reply because he had not at that point received the reply briefs from the Defendants.  Thus, the Court declines to construe ECF No. 76 as a sur-reply and will not address its contents on this motion.

In sum, the Court does not address any of these arguments, which are irrelevant to the analysis of the motion to dismiss.

## CONCLUSION

For the reasons set forth above, I respectfully recommend the motion be **granted** and the Second Amended Complaint be dismissed in full, with prejudice as to the Section 1983 claims against all Defendants and the Title VI claims against Pujolis and Freeman, and without prejudice as to the Title VI claims against NYPH and Columbia.  **The Clerk is respectfully directed to mail a copy of this Report and Recommendation to the Plaintiff.**

Dated: January 16, 2026
      New York, New York

                        Respectfully submitted,

                        KATHARINE H. PARKER
                        United States Magistrate Judge

## NOTICE

Plaintiff shall have seventeen days and Defendants shall have fourteen days from this date to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) to this Report and Recommendation.  If Defendants file written objections to this Report and Recommendation, Plaintiff may respond to the objections within seventeen days after being served with a copy. Fed. R. Civ. P.72(b)(2). If Plaintiff files written objections, Defendants may respond to the objections within fourteen days.

Objections and responses to objections shall be filed with the Clerk of Court, with courtesy copies delivered to the Hon. John P. Cronan at 500 Pearl Street, New York, NY 10007-1312, to the chambers of the undersigned magistrate judge, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any request for an extension of time to file objections must be directed to Judge Cronan. Failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).